Opinion by
Mr. Justice Moore.
We will refer to the parties as follows: to plaintiff in error as the employer, Gloria Joan Kolander as the claimant, and the Industrial Commission of Colorado as the Commission.
Claimant suffered injuries on May 18, 1960, in an accident arising out of and in the course of her employment. In proceedings before the Commission she was awarded benefits for medical expenses and compensation for the time she was absent from work on account of the accident. The Commission by its order of September 2, 1960, ruled that claimant “sustained no permanent disability.”
On September 11, 1961, claimant filed a petition with the Commission asking that her claim be reopened for reconsideration of the question of permanent disability. On September 27, 1961, the case was reopened for the purpose of “determining whether or not there has been error, mistake or change of condition;” and October 11, 1961, was set as the day for hearing. On September 29, 1961, counsel for the employer wrote to counsel for claimant (who had in the meantime moved to the State of Missouri) as follows:
“I note that the Kolander case has been set for hearing on October 11, 1961. Pursuant to the Act we request that the claimant be re-examined by Dr. John Gardell before the hearing or that the hearing be continued un *587 til such time when she can make arrangements for such examination.
“Will you kindly call me so that I can make the necessary appointment with Dr. Gardell so that such examination can be had before the hearing date.”
It is disclosed by the record that the claimant came to Denver from Missouri, pursuant to the demand above quoted, and was examined by Dr. Gardell, the physician selected by the employer. She was also examined by a physician of her own choosing, one Dr. Joshua. Their examinations were made on October 10, 1961, the day before the scheduled hearings.
The record further discloses that on October 11, 1961, the case was continued until November 3, 1961, “by agreement of the parties.” It was then continued until December 15, 1961, at which time it was postponed indefinitely; the order reciting that “By agreement between the parties; To be redocketed at the request of either party if request is made within three (3) months.” Such a request was made by counsel for the claimant on February 5, 1962. February 9, 1962, counsel for the employer notified claimant and her counsel by letter as follows:
“I have a copy of your letter of February 5, 1962, asking that the above case be redocketed for medical testimony. Inasmuch as the claimant was injured in Colorado and voluntarily moved out of the State of Colorado, we are requesting that she submit to further medical examinations prior to the time of the hearing before the Commission for the purpose of determining whether or not claimant sustained any permanent disability as the result of her accident.
“It is our desire that she be examined by Dr. Charles Freed, neurosurgeon, 3535 Cherry Creek North Drive, and another orthopedic surgeon being either Dr. Harry C. Hughes, Dr. Allen Franz or Dr. Sam Newman. If you will advise this office when Mrs. Kolander would be in Denver and available for such examinations, we will *588 make arrangements immediately with the doctors to' coincide with her arrival and convenience. The reason that I have mentioned several orthopedic doctors is that if one is not available at or about the time of Dr. Freed’s examination we will be able to secure the services of one of the others.
“It is our decision and in accordance with the Workmen’s Compensation Act that the claimant should submit for such medical examinations prior to the determination of the matter, and, if possible, before the hearing. * * *”
Claimant’s attorney, in response to the above request, wrote the employer’s attorney and the Commision as follows:
February 23, 1962:
“Mr. Butler wrote me on February 9, 1962, with a copy to the Industrial Commission, requesting additional medical examinations of the claimant in Denver. As I have explained to Mr. Butler, this entails great hardship on the part of the claimant who already returned to Denver at the request of the respondent and submitted herself for medical examinations and cross-examination at the Commission in October, 1961.
“My client lives in a remote section of Missouri, has no telephone and communication with her is quite difficult. In addition, her financial resources are exhausted because of the extensive loss of time and medical expenses she has suffered. The great effort she made in coming here in October should certainly have provided the respondent with sufficient information.
“I have suggested that if the respondent wishes hér to come back, the respondent should pay Mrs. Kolander’s traveling expenses but I have not been successful in urging this solution.
“At the hearing on March 1, I will take this matter up with the referee.”
February 26, 1962:
“On Sunday morning, February 25, 1962, Mrs. Kola'n *589 der- finally learned that I was trying to reach her and she telephoned me. She tells me that Dr. Francis felt that the seizure which she suffered late last year is related to the fall. He has forbidden her to drive a car. The. fact of the seizure and her lack of money make it difficult to bring her back here. However, she told me on the phone that she would do anything to bring this matter to a conclusion and she will come to Denver if necessary.
“Under the circumstances, and since Mrs. Kolander came over here in October for medical examinations and cross-examination, I think that this next trip should be at the expense of the respondent and that she should be provided with sufficient funds so that somebody can come along with her for safety reasons.
“Also, I think it would be most useful in this case to have, the depositions of Drs. Trotter and Francis, the treating physicians in Missouri, and, if the Commission will so order, this can be done through the Industrial Board in Missouri.”
The matter came on for hearing on March 1, 1962, before a referee of the Commission. Counsel for the employer objected to proceeding with the hearing. He recited the request for the second examination with which claimant refused to comply except on condition that her expenses to Denver be paid. His objection was that claimant’s right to proceed was “suspended” until she submitted herself for examination pursuant to the request of counsel for the employer. Claimant’s attorney offered to produce his client for medical examination at Denver if her travel expenses were paid.
Medical evidence pertinent to the question of permanent disability was taken and the referee reserved ruling on the objections made by counsel for the employer, Thereafter, and on April 23, 1962, the referee entered a Supplemental Order in which it was found “* * * that the .claimant has permanent disability of 2%% as a working unit as the result of the accident on May Í8, *590 1960.” Benefits were ordered paid pursuant to this finding.
No ruling of the referee upon the objections of counsel for the employer is disclosed by the record. After taking the matter under advisement following the taking of medical evidence offered by counsel for the claimant, more than six weeks elapsed before any step was taken. No notice was given to counsel for the employer that the referee intended to, or in fact had, overruled his objections. No opportunity was offered the employer to present additional medical evidence, or to defray the expenses of the claimant in traveling from Missouri to Denver for the purpose of an examination by a neurosurgeon. The only medical evidence which was received at the time of the hearing, to which the employer objected, was that offered by the claimant. Counsel for the employer did not rest his case, nor submit it to the referee for consideration upon the merits.
The last thing that happened at the hearing before the referee was a request by counsel for claimant that depositions be taken from claimant’s doctors in Missouri. This request was followed by an objection to the admission in evidence of the written reports from claimant’s doctors. The attorney for the employer objected to the taking of these depositions on the ground that such action “would place an unreasonable and undue burden upon the respondent * * The following then appears in the record (counsel for the employer is speaking):
“* * * secondly, we object to it until such time as she submits under Section 81 of the statute to examination by a Colorado doctor, where she was injured, and we now again request that she be returned and we have made written request upon the claimant’s attorney for her to appear here and be examined by a competent neurosurgeon and other doctors. I think the case should be suspended until she does arrange to come here and be examined by some competent doctor here in Colorado to determine this later involvement in this case.
*591 “MR. KRIPKE: Which we would be willing to do at the expense of the respondent.
“The REFEREE: Off the record. (Whereupon, a discussion was held off the record.)
“MR. BUTLER: That is all at this time.
“THE REFEREE: Let me take your motion under advisement and your letter and I’ll come up with some kind of an answer and let you both know what further action we’ll take on this.
“MR. KRIPKE: All right. (Whereupon, the hearing terminated.)”
The next thing that happened was the entry of the Supplemental Order of April 23, 1962, hereinabove mentioned.
In the petition for review filed before the Commission, as well as in the complaint filed in the district court, counsel for the employer directed attention to the fact that the referee erred in not ruling upon the objection made to going forward with the hearing. The complaint in the district court contains the following averment, inter alia:
“That at said hearing the Referee of the defendant Industrial Commission took under advisement this motion [a motion to suspend proceedings for failure to submit to examination] of the plaintiff but failed to rule upon said motion so taken under advisement.”
From the petition for review filed before the Commission we quote, inter alia, the following:
“Thereafter, and prior to the testimony at the time of the hearing, on March 1, 1962, the attorney for respondent moved that the Referee require claimant to comply with said Section 81 and report for an examination to the physician designated by respondent and that because of her failure to do so all proceedings be suspended. (p.2) Thereafter, the Referee took such motion under advisement but permitted the claimant to proceed with her medical testimony, (p.4) At the conclusion of the hearing on said day, respondent again moved for the *592 Referee to grant said motion in compliance with the statute (p.27,28), and the Referee again announced that he would take said motion under advisement and he would come up with an answer, (p.29)
“However, contrary to the advice of the Referee no ruling was ever made by the Referee in reference to the respondent’s motion, and said situation which is mandatory was completely overlooked and ignored by the Referee.”
Under the foregoing state of the record the Supplemental Order of the referee, dated April 23, 1962, and the order of the Commission dated December 26, 1962, upholding the referee, cannot be sustained for the reason that the employer had not rested his case. His counsel had a right to know whether his objections to the hearing were overruled; or whether they were sustained in order that he might go forward with his case; or govern himself as he saw fit after the ruling on his objections was made. The action of the referee in summarily entering the Supplemental Order before the employer had rested, could not put an end to the right of the employer to present his evidence. This is clear from the last comment of the referee at the hearing, viz: “Let me take your motion under advisement, and your letter and I’ll come up with some kind of an answer and let you both know what further action we’ll take on this.”
The judgment is reversed and the cause remanded with directions to vacate the award of the Commission and to remand the cause to the Commission for further proceedings consistent with the views herein expressed.
Mr. Justice Sutton and Mr. Justice Hall concur.